UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------- X
VIJAY BEDASIE, RUDDY DIAZ, and JOSE
ROSARIO,

                         Plaintiffs,                       **MEMORANDUM AND ORDER**

          -against-                               13 CV 5453 (CLP)

MR.   Z   TOWING,   INC.,   FRANK
ANDREOPOULOS, and HELEN MUSTAKAS,

                         Defendants.
---------------------------------------------------------- X

**POLLAK**, United States Magistrate Judge:

      On October 2, 2013, plaintiffs Vijay Bedasie and Ruddy Diaz commenced this action

against defendants Mr. Z Towing, Inc. ("Mr. Z"), Frank Andreopoulos, and Helen Mustakas

(collectively, "defendants"), seeking unpaid overtime wages, minimum wages, and spread-of-

hours pay, pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., and New

York Labor Law ("NYLL") § 650.  In addition, plaintiffs sought damages stemming from

defendants' alleged failure to comply with the notice and record keeping requirements of the

NYLL, liquidated damages under both the NYLL and FLSA, and prejudgment interest under the

NYLL.  On November 30, 2013, plaintiffs filed an Amended Complaint that included the claims

of plaintiff Jose Rosario.

      Following a bench trial before the undersigned, the Court entered a verdict in favor of

plaintiffs Bedasie, Diaz, and Rosario (collectively, "plaintiffs"), on certain claims and awarded

damages in the amount of $119,655.11.[1]

Presently before the Court is plaintiffs' motion for attorneys' fees.  Plaintiffs do not seek to be reimbursed for any costs associated with the litigation.  Defendants failed to file a response to plaintiffs' motion for attorneys' fees, and never contacted the Court or counsel for plaintiffs to request an extension of time to oppose the motion.  More than three months passed after the plaintiffs' motion for attorneys' fees was filed, with not a word from defendants.  The defendants now contend, through new counsel, that they were waiting for this Court to schedule a response date, but they made no effort to request such a deadline or inquire as to a briefing schedule.  Having received no objections or opposition, the Court proceeded to review plaintiffs' fee application, and issued an Order on August 11, 2017, finding that plaintiffs were entitled to fees in the amount of $178,110.75.

That same day, defendants, through new counsel, submitted a letter complaining that because no date had been set for their response, they had not submitted any objections to the fee request even though three and a half months had passed since the fee request was filed.  Despite the clear deadline set out in Local Civil Rule 6.1 and their incredible explanation,[2] this Court

---

[1] The Court assumes familiarity with the facts of this case, which are set forth in the Court's earlier opinion, Bedasie v. Mr. Z Towing, Inc., 2017 WL 1135727 (E.D.N.Y. Mar. 24, 2017) (ECF No. 85).

[2] In the three and a half months between the initial filing of plaintiffs' Motion for Attorneys' Fees and the Court's initial Order on that motion, the defendants did nothing.  They did not request a briefing schedule.  They did not confer with plaintiffs' counsel.  They did not call or otherwise make inquiry of the Court.  Such conduct is even more perplexing in light of the default briefing schedule imposed by the Local Rule, which provides fourteen days within which to respond to a motion.  See E.D.N.Y. L. Civ. R. 6.1(b).  While a slight delay might be understandable, total inaction for more than three months reflects both a lack of diligence and of common sense.

granted defendants' request for additional time to object and withdrew its previously entered Order dated August 11, 2017.  Defendants filed their opposition on August 25, 2017, to which plaintiffs replied on September 1, 2017.

Having now received and reviewed the defendants' objections to plaintiffs' fee request, the Court awards plaintiffs $186,938.63 in attorneys' fees.  This includes the additional amounts incurred by plaintiffs' counsel in having to respond to defendants' untimely submissions.

PROCEDURAL BACKGROUND

Following the filing of the Amended Complaint and Answer, the parties engaged in pretrial discovery and participated in settlement negotiations before the Honorable Marilyn D. Go.  On August 14, 2015, the Honorable Carol B. Amon granted partial summary judgment to plaintiffs as to their claims under Section 195(3) of the NYLL for wage statement violations, leaving for trial only the following disputed claims:  (1) claims for unpaid minimum wages on behalf of plaintiffs Bedasie and Diaz; (2) claims for unpaid overtime wages for all three plaintiffs; (3) claims for unpaid spread-of-hours wages for plaintiffs Bedasie and Diaz;[3] (4) liquidated damages for all unpaid wages; (5) prejudgment interest; and (6) attorneys' fees.

On January 19, 2016, after numerous attempts to settle the remaining claims proved fruitless, the parties consented to proceed before the undersigned for a bench trial, which was held from May 2, 2016 to May 5, 2016.  Following the conclusion of the trial, the parties submitted post-trial memoranda summarizing their respective positions on the evidence.

---

[3] Plaintiff Rosario withdrew his claim for spread-of-hours wages.  See Bedasie v. Mr. Z Towing, 2017 WL 1135727, at *40.

3

In an Order issued on March 24, 2017, Court found in favor of the plaintiffs and held defendants Andreopoulos and Mr. Z jointly and severally liable to plaintiffs Bedasie and Diaz for unpaid minimum wages, unpaid overtime wages, unpaid spread-of-hours wages, liquidated damages and prejudgment interest under the FLSA and NYLL.  The Court also found defendants Andreopoulos and Mr. Z jointly and severally liable to plaintiff Rosario for unpaid overtime wages, liquidated damages, and prejudgment interest under the FLSA and NYLL.  Finally, the Court held that plaintiffs failed to establish by a preponderance of the evidence that defendant Mustakas was an "employer" within the meaning of either the FLSA or NYLL, and therefore she is not liable for any violations under the FLSA or NYLL.  The Court awarded plaintiffs damages in the total amount of $119,655.11, representing unpaid wages, liquidated damages, wage notice violations, and prejudgment interest.  Plaintiffs were given additional time to file a motion for attorneys' fees and costs.

On March 29, 2017, counsel filed a motion seeking to reduce the amount awarded in damages based upon defendants' previous payment of $7,500 toward the wage notice violations found earlier by the Honorable Carol B. Amon in an Order issued on August 14, 2015.  While that motion to reduce damages was pending, plaintiffs filed a post-trial motion for attorneys' fees on May 1, 2017, seeking $188,375.50 in fees.  Defendants did not respond to plaintiffs' motion for attorneys' fees until after this Court rendered its initial decision on the fee application on August 11, 2017.

On August 14, 2017, plaintiffs filed a letter motion for a restraining order and discovery pursuant to Civil Practice Law and Rules 5229, seeking certain document discovery and the deposition of defendant Frank Andreopoulos in aid of preventing the dissipation of any assets

4

necessary to satisfy the judgment.  Defendants responded by letter that same day objecting to the motion and requesting a briefing schedule.

On September 19, 2017, while the post-trial motions were pending and before this Court had entered judgment, the defendants filed their Notice of Appeal with respect to the Court's March 24, 2017 Memorandum and Opinion.

<u>DISCUSSION</u>

**A. Attorneys' Fees**

Plaintiffs seek to recover an award in the amount of $188,375.50 in attorneys' fees (Pls.' Notice[4] at 1), pursuant to the applicable provisions of the FLSA and the NYLL.  <u>See</u> 29 U.S.C. § 216(b) (providing that in an action to recover wages, the court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action"); N.Y. Lab. L. § 663(1) (providing that an employee paid less than required under the NYLL "shall recover in a civil action the amount of any such underpayments, together with costs [and] all reasonable attorney's fees").  Plaintiffs also seek to recover the fees incurred in litigating their fee application, which amount to $9,292.50.  (<u>See</u> Pls.' Reply[5] at 16-17, Sept. 1, 2017, ECF No. 99).[6]

In accordance with <u>New York State Ass'n for Retarded Children, Inc. v. Carey</u>, 711 F.2d

---

[4] Citations to "Pls.' Notice" refer to plaintiffs' Notice of Motion for Attorneys' Fees, filed on May 1, 2017, ECF No. 88.

[5] Citations to "Pls.' Reply" refer to plaintiffs' Memorandum of Law in Further Support of Plaintiffs' Motion for Attorneys' Fees, filed on September 1, 2017, ECF No. 99.

[6] As discussed *infra* at 15, such fees are properly recoverable under both the FLSA and NYLL.

1136, 1148 (2d Cir. 1983), plaintiffs' counsel has submitted a declaration, along with contemporaneous billing records, setting forth the dates and amount of time during which services were rendered, the hourly rate at which the services were charged, along with the name of the attorney performing the work and a description of services performed.  (See Katz Decl.,[7] Ex. 1 & 2; Katz Reply Decl.,[8] Ex. 4).  Plaintiffs have not requested to be reimbursed for the costs of the litigation, such as the filing fee or service of process fees.

Courts employ the "lodestar" method in calculating reasonable attorneys' fees, multiplying the number of hours reasonably spent by counsel on the matter by a reasonable hourly rate.  See Perdue v. Kenny A., 559 U.S. 542, 546, 551-52 (2010); Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011); Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 183 (2d Cir. 2008); Cowan v. Ernest Codelia, P.C., No. 98 CV 5548, 2001 WL 30501, at *7 (S.D.N.Y. Jan. 12, 2001), aff'd, 50 F. App'x 36 (2d Cir. 2002). Although there is a "strong presumption that this amount represents a reasonable fee," the resulting lodestar figure may be adjusted based on certain other factors.  Cowan v. Ernest Codelia, P.C., 2001 WL 30501 at *7; Quaratino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 1999).

### 1.  Jurisdiction to Award Attorneys' Fees

As mentioned above, the filing of a notice of appeal is an event of jurisdictional

---

[7] Citations to "Katz Decl." refer to the Declaration of Kenneth J. Katz in Support of Plaintiffs' Motion for Attorneys' Fees, filed on May 1, 2017, ECF No. 88-2.

[8] Citations to "Katz Reply Decl." refer to the Reply Declaration of Kenneth J. Katz in Further Support of Plaintiffs' Motion for Attorneys' Fees, filed on September 1, 2017, ECF No. 99-1.

significance: it "confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." Drywall Tapers & Pointers of Greater NY v. Bovis Lend Lease Interiors, Inc., No. 05 CV 2746, 2006 WL 322384, at *2 (E.D.N.Y. Feb. 10, 2006) (quoting Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 58 (1982)). It is clear, however, that "notwithstanding a pending appeal, a district court retains residual jurisdiction over collateral matters, including claims for attorneys' fees." Tancredi v. Metropolitan Life Ins. Co., 378 F.3d 220, 225 (2d Cir. 2004). While a trial court retains discretion to postpone determining a fee award until after an appeal has been decided, it is often more efficient to decide the fee issue to allow the Court of Appeals to consider all issues at once and to prevent piecemeal litigation. See, e.g., Giuffre Hyundai Ltd. v. Hyundai Motor America, No. 13 CV 520, at *1 (E.D.N.Y. Sept. 13, 2013) (quoting Tancredi v. Metropolitan Life Ins. Co., 378 F.3d 220, 227 (2d Cir. 2004); Weyant v. Okst, 198 F.3d 311, 314 (2d Cir. 1999)).

In this case, the Court concludes that it possesses jurisdiction to decide the motion for attorneys' fees and that it is appropriate to decide the issue now rather than to await disposition of the pending appeal by the Court of Appeals.

## 2. Reasonable Hourly Rate

When assessing whether legal fees are reasonable, the Court determines the "presumptively reasonable fee" for an attorney's services by looking to what a reasonable client would be willing to pay. See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d at 183. To calculate the presumptively reasonable fee, a court must first determine a reasonable hourly rate for the legal services performed. Id. In Arbor Hill, the

Second Circuit adopted the following factors to guide the court's inquiry as to what constitutes a reasonable hourly rate:

> 1) the time and labor required; 2) the novelty and difficulty of the questions; 3) the level of skill required to perform the legal service properly; 4) the preclusion of employment by the attorney due to acceptance of the case; 5) the attorney's customary hourly rate; 6) whether the fee is fixed or contingent; 7) the time limitations imposed by the client or the circumstances; 8) the amount involved in the case and the results obtained; 9) the experience, reputation, and ability of the attorneys; 10) the "undesirability" of the case; 11) the nature and length of the professional relationship with the client; and 12) awards in similar cases[.]

Id. at 187 n.3 (citation omitted).  A number of courts within the Second Circuit have applied these factors when awarding attorneys' fees.  See, e.g., Manzo v. Sovereign Motor Cars, Ltd., No. 08 CV 1229, 2010 WL 1930237, at *7 (E.D.N.Y. May 11, 2010); Adorno v. Port Auth. of New York & New Jersey, 685 F. Supp. 2d 507, 511 (S.D.N.Y. 2010); Cruz v. Henry Modell & Co., Inc., No. 05 CV 1450, 2008 WL 905351, at *3 (E.D.N.Y. Mar. 31, 2008).

Courts are also instructed to balance:

> the complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively . . . , the timing demands of the case, whether the attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether the attorney might have initially acted pro bono . . . , and other returns (such as reputation, etc.) the attorney might expect from the representation[.]

Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d at 184; see also Heng Chan v. Sung Yue Tung Corp., No. 03 CV 6048, 2007 WL 1373118, at *2 (S.D.N.Y. May 8, 2007).

In this case, plaintiffs were represented by Katz Melinger PLLC and Slater Slater

Schulman LLP (collectively, "plaintiffs' counsel").  Plaintiffs seek: (1) an hourly rate of $400 for the work of Kenneth Katz, Esq., the founder and sole member of Katz Melinger PLLC, and for the work of Adam Slater, Esq. and Jonathan Schulman, Esq., partners at Slater Slater Schulman LLP; (2) an hourly rate of $350 for the work of Nicole Grunfeld, Esq., a senior associate at Katz Melinger PLLC with twelve years of experience; and (3) an hourly rate of $200 for the work of Meredith Singer, Esq., Jennifer Chandler, Esq., and Adam Sackowitz, Esq., associates at Katz Melinger PLLC.  (Katz Decl. ¶¶ 3-33; Mem.[9] at 3-6).

In opposing plaintiffs' request for fees, defendants argue that: 1) the hourly rates charged by plaintiffs' counsel are unreasonably high; and 2) counsel billed "dozens of hours and tens of thousands of dollars at high hourly rates for low-level and non-compensable work."  (Defs.' Mem.[10] at 12-14 (citing Katz Decl., Exs. 1, 2)).

Specifically, with respect to the hourly rates charged by the three partners who performed work on the case, defendants argue that their requested rates are higher than the rates awarded to comparable attorneys in the field.  (Id. at 15-18 (citing cases)).  They contend that the partners' experience and skill in the field do not warrant hourly rates near the higher end of the acceptable rate scale and that their rates should be reduced from $400 per hour to $300 per hour.  (Id.)

Kenneth Katz is a partner at Katz Melinger PLLC who graduated from law school in 2003 and has been admitted to practice law since 2004.  (See Katz Decl. ¶¶ 5-6, ECF No. 88-2). Mr. Katz has over twelve years of litigation experience, with at least seven years dedicated to

---

[9]Citations to "Mem." refer to the Memorandum of Law in Support of Plaintiffs' Motion for Attorneys' Fees, filed on May 1, 2017, ECF No. 88-1.

[10]Citations to "Defs.' Mem." refer to the Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Attorneys' Fees, dated August 25, 2017, ECF No. 96.

litigating employment matters.  (See id. ¶¶ 7-8).  Adam Slater is a partner at Slater Slater

Schulman LLP with over twelve years of litigation experience.  (See id. at ¶¶ 28-29).  Jonathan

Schulman is a partner at Slater Slater Schulman LLP, with over thirteen years of litigation

experience.  (See id. at ¶¶ 31-33).  Based on the Court's knowledge of the rates generally

charged in this district for work performed in FLSA and NYLL cases, the Court finds that the

rate of $400 for Mr. Katz, Mr. Slater, and Mr. Schulman is consistent with the rates generally

awarded to partners representing plaintiffs in FLSA cases in this district.  See, e.g., Hall v.

ProSource Techs., LLC, No. 14 CV 2502, 2016 WL 1555128, at *12 (E.D.N.Y. Apr. 11, 2016)

(holding that a partner with twelve years of experience in litigating FLSA and NYLL wage and

hour lawsuits should be awarded an hourly rate of $450); Bosoro v. American Comprehensive

Healthcare Med. Grp., No. 14 CV 1099, 2015 WL 5676679, at *9 (E.D.N.Y. Aug. 31, 2015),

report and recommendation adopted, 2015 WL 5686481 (E.D.N.Y. Sept. 25, 2015) (stating that

"prevailing hourly rates in the Eastern District of New York [are] between $350 and $400 for

law firm partners"); Bodon v. Domino's Pizza, LLC, No. 09 CV 2941, 2015 WL 3889577, at *8

(E.D.N.Y. June 4, 2015), report and recommendation adopted sub nom. Bodon v. Domino's

Pizza, Inc., 2015 WL 3902405 (E.D.N.Y. June 24, 2015) (holding that "recent cases have held

that partners in wage and hour cases are generally entitled to recover $300 to $450 per hour");

Hui Luo v. L&S Acupuncture, P.C., No. 14 CV 1003, 2-15 WL 1954468, at *2 (E.D.N.Y. Apr.

29, 2015) (observing that the prevailing hourly rates for partners in this district in a wage and

hour case ranges from $300 to $400), aff'd, No. 15 CV 1892, 2016 WL 2848646 (2d Cir. May

16, 2016); Griffin v. Astro Moving & Storage Co. Inc., No. 11 CV 1844, 2015 WL 1476415, at

*8 (E.D.N.Y. Mar. 31, 2015) (collecting cases and awarding a partner at a law firm with 27 years

of employment litigation experience an hourly rate of $400 after a FLSA jury trial); <u>Lesser v. U.S. Bank Nat. Ass'n</u>, No. 09 CV 2362, 2013 WL 1952306, at *10 (E.D.N.Y. May 10, 2013) (awarding $425 per hour in straightforward commercial litigation to lead partner with 28 years of experience in commercial litigation group of Reed Smith); <u>Ferrara v. CMR Contracting LLC</u>, 848 F. Supp. 2d 304, 313 (E.D.N.Y. 2012) (observing that "[i]n recent years, courts in this district have approved hourly fee rates in the range of $200 to $450 partners, $100 to $300 for associates and $70 to $100 paralegal assistants"); <u>Toussie v. County of Suffolk</u>, No. 01 CV 6716, 2011 WL 2173870, at *2 (E.D.N.Y. May 31, 2011) (approving fees at the rate of $450 per hour for a partner with 34 years experience).

District courts are afforded considerable discretion in reviewing fee applications and determining reasonable hourly rates, in part because of their experience and understanding of the course of the litigation.  <u>See, e.g.</u>, <u>Matusick v. Erie Cty. Water Auth.</u>, 757 F.3d 31, 64 (2d Cir. 2014) (explaining that "[w]e afford a district court considerable discretion in determining what constitutes reasonable attorney's fees in a given case, mindful of the court's 'superior understanding of the litigation'") (quoting <u>Barfield v. N.Y.C. Health & Hosps. Corp.</u>, 537 F.3d 132, 151 (2d Cir. 2008)); <u>Chen v. JP Standard Constr. Corp.</u>, No. 14 CV 1086, 2016 WL 2909966, at *15 (E.D.N.Y. Mar. 18, 2016), <u>report and recommendation adopted</u>, 2016 WL 2758272 (E.D.N.Y. May 12, 2016) (observing that a "[c]ourt can and should exercise broad discretion in determining a reasonable fee award").  In reviewing the plaintiffs' fee request here, this Court has not only considered the rates found reasonable in other cases, but has also considered the difficulty of the issues presented, and the time and effort needed on the part of counsel based in part on defendants' own conduct.

Unlike some of the cases cited by defendants, in this case, plaintiffs' attorneys were forced to litigate an extremely difficult wage and hour case, complicated by the almost total lack of employment records, the unusual payment scheme utilized by defendants, the lack of clear legal authority dealing with this type of wage violation, inconsistencies in the testimony of defendants' own witnesses, and the trial tactics, lack of responsiveness, and/or ineptitude of defendants' prior counsel.  Discovery in the case lasted over two years;[11] numerous depositions were held.  A motion for partial summary judgment was filed and plaintiffs were forced to request a pre-motion conference to dismiss certain counterclaims that were eventually withdrawn.  Defendants' filings failed to demonstrate even the most basic understanding of the applicable law, resulting in unnecessary motion practice.  The defendants were sanctioned for missing a deadline and failing to file the proposed joint pretrial order.  Indeed, after plaintiffs had submitted their proposed pretrial order in August 2015, the defendants sought to add affirmative defenses and to expand discovery.  In addition, despite scheduled motions *in limine*, at the last moment, defendants attempted to enter into evidence at trial certain documents which had never been provided during discovery; plaintiffs were forced to respond and an order of preclusion was entered.  These are just some examples of the complications and conduct that plaintiffs faced throughout the course of this litigation.  (See Pls.' Reply at 7-11, ECF No. 99).

In short, the Court disagrees completely with defendants' claim that "[t]his was a

---

[11]Although discovery was initially declared completed as of August 19, 2014 (see Minute Entry, Aug. 19, 2014), it was subsequently re-opened in January 2015 to deal with jurisdictional questions (see Minute Entry, Jan. 16, 2015), and then extended again at defendants' request in June 2015 to continue depositions.  (See Defs.' Letter Mot. to Extend Discovery, June 23, 2015, ECF No. 35; Minute Order, July 22, 2015).

straightforward, non-collective FLSA case" (Defs.' Mem. at 2),[12] and finds that the rate of $400

per hour for the partners' work is warranted.

Defendants also challenge the $350 an hour rate requested by plaintiffs to compensate for

the work performed by Ms. Grunfeld.  Ms. Grunfeld is a senior associate at Katz Melinger PLLC

with twelve years of experience, and according to plaintiffs, "performed the majority of work" in

this case.  (Katz Decl. ¶ 14).  Defendants contend that her rate should be reduced to $262.50 an

hour.  Although the Court recognizes the extent and complexity of the work Ms. Grunfeld

performed, the Court finds that the hourly rate of $350 is higher than rates ordinarily awarded to

senior associates in this district.  See Quito v. El Pedragal Rest., Corp., No. 16 CV 6634, 2017

WL 2303979, at *2 (E.D.N.Y. May 26, 2017) (quoting Tacuri v. Nithin Constr. Co., No. 14 CV

2908, 2015 WL 790060, at *13 (E.D.N.Y. Feb. 24, 2015) (finding that, in FLSA cases, "'a

reasonable hourly rate for a senior associate ranges from $200 to $300'"); Griffin v. Astro

Moving & Storage Co. Inc., 2015 WL 1476415, at *8 (citing cases) (holding that recent opinions

in this district have found reasonable hourly rates to be in the range of $200 to $325 for senior

associates in FLSA cases); Pall Corp. v. 3M Purification Inc., No. 03 CV 0092, 2012 WL

1979297, at *4 (E.D.N.Y. June 1, 2012) (holding that "[r]ecent opinions issued by courts within

the Eastern District of New York have found reasonable hourly rates to be 'approximately $300–

$450 for partners, $200–$325 for senior associates, and $100–$200 for junior associates'").

---

[12] It is difficult to conceive how defendants' new counsel could make this argument
sincerely if she has reviewed even a portion of defendants' earlier filings in this case.  While the
Court agrees that this should have been a straightforward case, defendants and their initial
counsel chose to complicate matters unnecessarily at every turn.  That new post-trial counsel
would have made different decisions does not ameliorate defendants' conduct in this litigation in
the several years prior to her appearance.

However, the Court finds no basis for reducing her rate to $262.50 and has instead reduced Ms. Grunfeld's hourly rate to $325 per hour.

Finally, plaintiffs seek to recover fees at the hourly rate of $200 for Ms. Singer, Ms. Chandler, and Mr. Sackowitz, associates at Katz Melinger PLLC.  In recent years, courts in this district have awarded hourly rates of $100 to $200 for junior associates.  Rickettes v. Turton and Reyes, No. 12 CV 6427, 2015 WL 3868070 at *10 (E.D.N.Y. June 23, 2015) (citing Akman v. Pep Boys Manny Moe & Jack of Delaware, Inc., No. 11 CV 3252, 2013 WL 4039370, at *2 (E.D.N.Y. Aug. 7, 2013)).  Thus, since defendants have not raised any arguments regarding the rates charged for these associates and the rate is consistent with that typically awarded in this district, the Court finds that the hourly rate of $200 is reasonable for these associates.

Defendants also contend that plaintiffs' counsel billed at high rates for low-level, ministerial, and non-compensable tasks, and seek an across-the-board reduction in fees. (Defs.' Mem. at 12-13).  In support of this argument, they list a number of descriptions of tasks that they allege should be considered "clerical" or "non-compensable" tasks.  (Id. at 12).  However, apart from citing generally to the plaintiffs' billing records, they fail to present their objections with any level of specificity, such as the dates of service when such tasks were performed or other information that would facilitate the Court's review.  Having independently reviewed the billing records, the Court finds that to the extent that there may be a few random entries that suggest some miscellaneous tasks may have been billed at the full rate charged by the attorney, the Court finds that these are so infrequent as not to merit an across-the-board percentage reduction.

**3.   Reasonable Number of Hours Billed**

In awarding attorneys' fees, it is necessary for the Court to determine the reasonableness of the number of hours expended by counsel on the case.   See, e.g., LaBarbera v. Empire State Trucking, Inc., No. 07 CV 669, 2008 WL 746490, at *4-5 (E.D.N.Y. Feb. 26, 2007).  Such fees are not limited to the trial of the matter, but also properly include a "reasonable fee for preparing and defending a fee application," including any fees incurred as a result of appeals related to defending the fee application.  Hines v. City of Albany, 862 F.3d 215, 223 (2d Cir. 2017) (citing Weyant v. Okst, 198 F.3d 311, 316-17 (2d Cir. 1999)); accord Lema v. Mugs Ale House Bar, No. 12 CV 2182, 2014 WL 1230010, at *7 (E.D.N.Y. Mar. 21, 2014).

In reviewing a fee application, the court "should exclude excessive, redundant or otherwise unnecessary hours."  Bliven v. Hunt, 579 F.3d 204, 213 (2d Cir. 2009) (quoting Hensley v. Eckerhart, 461 U.S. 424, 433-35, 440 (1983)).  If the court finds "that some of the time was not reasonably necessary . . . it should reduce the time for which compensation is awarded accordingly."  Louis Vuitton Malletier, S.A. v. LY USA, Inc., 676 F.3d 83, 111 (2d Cir. 2012); see also Struthers v. City of New York, No. 12 CV 242, 2013 WL 5407221, at *8-9 (E.D.N.Y. Sept. 25, 2013) (reducing fees because the fees requested for responding to motion papers were "excessive"); Jemine v. Dennis, 901 F. Supp. 2d 365, 393 (E.D.N.Y. 2012) (reducing requested fees by 10% because the "quality and complexity of the submissions and calculations" did not reflect the hours expended); Ehrlich v. Royal Oak Fin. Servs., No. 12 CV 3551, 2012 WL 5438942, at *3-4 (E.D.N.Y. Nov. 7, 2012) (reducing attorneys' fees because the attorney's litigation of the suit made apparent his "lack of experience" and for duplicative entries); Quinn v. Nassau Cnty. Police Dep't., 75 F. Supp. 2d 74, 78 (E.D.N.Y. 1999) (reducing

one attorney's fees by 20% and another's by 30% for unnecessary and redundant time);

American Lung Ass'n v. Reilly, 144 F.R.D. 622, 627 (E.D.N.Y. 1992) (finding that the "use of

so many lawyers for relatively straightforward legal tasks was excessive and led to duplication of

work," and deducting 40% of plaintiffs' lawyer's hours).

Rather than itemizing individual entries as excessive, the court may make an "across-the-

board reduction, or percentage cut, in the amount of hours." T.S. Haulers, Inc. v. Cardinale, No.

09 CV 451, 2011 WL 344759, at *3 (E.D.N.Y. Jan. 31, 2011) (citing Green v. City of New York,

403 F. App'x 626, 630 (2d Cir. 2010)).  Similarly, courts routinely apply across-the-board

reductions for vague entries.  See, e.g., Kirsch v. Fleet St. Ltd., 148 F.3d 149, 173 (2d Cir. 1998)

(affirming district court's 20% reduction in attorneys' fees for "vagueness, inconsistencies, and

other deficiencies in the billing records"); Moore v. Diversified Collection Servs., Inc., No. 07

CV 397, 2013 WL 1622949, at *4 (E.D.N.Y. Mar. 19, 2013) (reducing attorney's fees by 10%

due to the "vagueness and incompleteness" of some of the entries); Tucker v. Mukasey, No. 03

CV 3106, 2008 WL 2544504, at *2 (S.D.N.Y. June 20, 2008) (reducing fees by 30% in part

because although some entries were detailed, others were vaguely worded or inconsistent);

Marisol A. ex rel. Forbes v. Giuliani, 111 F. Supp. 2d 381, 396-97 (S.D.N.Y. 2000) (concluding

that "the vagueness of some of the time records prevents the Court from determining why

plaintiffs were required to expend so many hours on these tasks" and accounting for this factor

by reducing fees by 15%); Cabrera v. Fischler, 814 F. Supp. 269, 290 (E.D.N.Y. 1993) (reducing

fees by 30% for vague entries with insufficient descriptions of work performed), rev'd in part &

remanded on other grounds, 24 F.3d 372 (2d Cir. 1994), cert. denied, 513 U.S. 876 (1994).

As noted above, plaintiffs' counsel has submitted contemporaneous billing records,

setting forth the dates and amount of time during which services were rendered, the hourly rate at which the services were charged, and the names of the individuals who provided these services, along with a description of the work performed.  In total, Mr. Katz billed 99 hours of work,[13] Mr. Slater billed 23 hours of work,[14] Mr. Schulman billed 18.6 hours of work and 1 hour of travel,[15]

---

[13]In determining the total hours worked by Mr. Katz, the Court calculated that Mr. Katz had worked a total of 91.7 hours through the filing of the Notice of Motion for Attorney's Fees. (See Pls.' Notice, Ex. 2, ECF No. 88-4).  However, because Mr. Katz only seeks to be compensated for 90.4 hours of work in that period, the Court awards plaintiffs attorney's fees based on the lower number of 90.4 hours for that time.  The Court calculated the total number of hours by adding the 90.4 hours from the May 1, 2017 filing to the 8.6 hours set forth in the invoice attached as Exhibit 4 to the Katz Reply Decl.

[14]In reviewing Slater Slater Schulman LLP's invoice, the Court assumes the entry attributed to "KH" at a rate of $125.00 per hour represents the work of a paralegal.  However, since plaintiffs have not identified the full name or the position of the individual who billed this time, the Court has excluded this entry from its calculation of the total hours worked by plaintiffs' counsel.

[15]Courts in the Second Circuit calculate attorneys' fees for travel by multiplying the number of hours the attorney has billed for travel by 50 percent of the attorney's regular hourly rate.  See DeMarco v. Ben Krupinski General Contractor, Inc., No. 12 CV 0573, 2014 WL 3696020, at *6 (E.D.N.Y. July 22, 2014) (citing Mister Sprout, Inc. v. Williams Farms Produce Sales, Inc., 881 F. Supp. 2d 482, 490 (S.D.N.Y. 2012)); Field Day, LLC v. Cty. of Suffolk, No. 04 CV 2202, 2010 WL 5491025, at *5 (E.D.N.Y. Sept. 9, 2010), report and recommendation adopted, 04 No. CV 2202, 2010 WL 5490990 (E.D.N.Y. Dec. 30, 2010) (quoting Access 4 All, Inc. v. 135 W. Sunrise Realty Corp., No. 06 CV 5487, 2008 WL 4453221, at *36–37 (E.D.N.Y. Sept. 30, 2008) (holding that "[i]t is well-established that within this circuit, time charged by an attorney for travel will be reimbursed at half of the attorney's [reasonable] hourly rate")).  In this case, Mr. Schulman billed 1 hour for travel, and, since his hourly rate is $400, he would be entitled to $200 per hour of travel.  However, since Mr. Schulman only seeks $125 per hour for his travel time, the Court finds that Mr. Schulman's request for travel at a rate of $125, which is actually less than 50 percent of his regular rate, is reasonable.

Ms. Grunfeld billed 375.7 hours of work,[16] Ms. Chandler billed 12.65 hours of work, Mr.

Sackowitz billed 35.2 hours of work, and Ms. Singer billed 43.7 hours of work.[17]  (Katz Decl.,

Ex. 1 at 1-2, Ex. 2 at 22; Katz Reply Decl., Ex. 4).

Having reviewed the billing records and time spent litigating this complicated FLSA

case, made all the more difficult by the absence of records and defendants' conduct in the course

of litigation, the Court finds that the number of hours billed is not excessive.  Defendants

complain that 70-80% of plaintiffs' time records are "impermissibly vague" and that plaintiffs

have used block-billing in some entries which make it difficult to determine whether the time

spent was reasonable. (Defs.' Mem. at 6-8, 9-10).  They also contend that the plaintiffs

overstaffed this "non-complex" case, and they seek a reduction of 40% in the total fee

application.

The Court has conducted a line-by-line review of the billing records (see Slater Slater

Schulman LLP Billing Records, Ex. 1 to Pls.' Notice, ECF No. 88-3; Katz Melinger PLLC

Billing Records, Ex. 2 to Pls.' Notice, ECF No. 88-4) and disagrees.  Not only does the Court

disagree that the case was a simple straight-forward case, and that a 40% overall reduction in

---

[16]The Court calculated that Ms. Grunfeld worked a total of 364.7 hours through the filing of the Notice of Motion for Attorney's Fees.  (See Pls.' Notice, Ex. 2).  However, since plaintiffs only seek attorney's fees for 360.4 hours of work performed by Ms. Grunfeld during that period, the Court awards plaintiffs fees for the amount of hours they seek for that time, which is the lower of the two amounts.  Thus, the Court has added those 360.5 hours to the 15.3 hours worked in connection with defending the fee application (see Katz Reply Decl., Ex. 4, ECF No. 99-5), to arrive at the total of 375.7 hours for Ms. Grunfeld.

[17]Although plaintiffs represent that Ms. Singer completed 52.3 hours of work, the Court calculated, based on the Katz Melinger billing records, that Ms. Singer had only billed for 43.7 hours of work.  (Pls.' Notice, Ex. 2).  Accordingly, the Court has calculated plaintiffs' attorneys' fees only for the 43.7 hours of work billed by Ms. Singer.

18

fees is not warranted, but plaintiffs' counsel has already agreed to take a voluntary 5% reduction

in fees "to account for time spent on what may be viewed as excessive or duplicative work."

(Mem. at 8).  The Court finds that such a voluntary reduction in the total amount of fees awarded

is proportionate and reasonable based on the length and duration of the case.[18]  Furthermore, the

Second Circuit has "concluded that block-billing . . . is not per se unreasonable," so long as it

does not frustrate meaningful review of the reasonableness of the hours claimed.  Hines v. City

of Albany, 613 F. App'x 52, 55 (2d Cir. 2015) (citing Merck Eprova AG v. Gnosis S.p.A., 760

F.3d 247, 266 (2d Cir. 2014)).  "The key question is whether the court, upon review of all the

time entries, can determine whether the total amount of time was reasonable considering all of

the activities undertaken."  United States v. Sixty-One Thousand Nine Hundred Dollars, 856 F.

Supp. 2d 484, 490 (E.D.N.Y. 2012).  To the extent there was any block billing in this case, this

has not presented an impediment to the Court's careful review, nor does it lead the Court to

---

[18]Finally, defendants argue that the amount of fees is disproportionate to the amount
sought in settlement, which defendants claim was at its lowest offer $1.8 million.  (Defs.' Mem.
at 21).  Apart from the total lack of support for defendants' claim as to the $1.8 million figure,
plaintiffs were successful in obtaining an award after trial based on minimum wage violations,
violations of the overtime wage law, the spread of hours wage law, wage notice violations,
interest, and liquidated damages.  The Court finds no reason to reduce the fee award on this
basis.

conclude that the hours expended were not reasonable.[19]

Thus, in light of the rates and hours discussed above, the Court awards fees as follows: (1) $39,600.00 for 99 hours of work at a rate of $400.00 for Mr. Katz; (2) $7,565.00 for 18.6 hours of work at a rate of $400.00 and 1 hour of travel at a rate of $125.00 for Mr. Schulman; (3) $9,200.00 for 23 hours of work at a rate of $400 for Mr. Slater; (4) $122,102.50 for 375.70 hours of work at a rate of $325.00 for Ms. Grunfeld; (5) $2,530.00 for 12.65 hours of work at a rate of $200.00 for Ms. Chandler; (6) $7,040.00 for 35.2 hours of work at a rate of $200.00 for Mr. Sackowitz; and (7) $8,740.00 for 43.7 hours of work at a rate of $200 for Ms. Singer.

---

[19] Some of the time entries made by Katz Melinger attorneys include tasks that are not compensable at attorney rates, such as "finaliz[ing] documents" or "send[ing] and fil[ing]," or "faxing and fil[ing]." (E.g. Katz Mellinger Billing Records at 11-12). Other entries show that two lawyers occasionally entered time related to the same task, most often when a junior attorney conducted initial work that a partner then reviewed or when junior attorneys prepared for and attended depositions or court conferences conducted by a partner. (E.g. id. at 7, 9, 19). In moderation, such overlapping time is perfectly reasonable: junior attorneys, who cost clients less, perform the majority of the work, while more experienced attorneys who command a higher hourly rate may deploy their expertise where it will matter most with the support of junior attorneys who are immersed in the details of the litigation. See, e.g., Editorial Board, Courtroom Role for Junior Attorneys Will Benefit Women, Minorities, N.Y. Law J., Oct. 9, 2017; Michael Rader, Rising to the Challenge: Junior Attorneys in the Courtroom, N.Y. Law J., Apr. 27, 2017; ChIP's Next Gen Committee, Judicial Orders Providing/Encouraging Opportunities for Junior Lawyers (Feb. 10, 2017) (http://nextgenlawyers.com/wp-content/uploads/2017/02/JudicialOrdersRegardingNextGen.docx-2.pdf); GSI Technology, Inc. v. United Memories, Inc., No. 13 CV 1081 (N.D. Cal. Mar. 9, 2016) (ECF No. 1112) (observing that "[i]t is difficult to imagine handing entire . . . trials to a generation that never had the chance to develop those skills in more limited settings").

Nonetheless, the Court calculated the approximate reduction that would be warranted to account for entries that include non-compensable administrative tasks and for tasks for which more than one attorney billed time. The Court's calculations yielded a figure less than the voluntary 5% reduction applied by plaintiffs' counsel, and thus the Court remains satisfied that the hours expended and amounts billed are reasonable.

### 4.  Total

Accordingly, having taken into account plaintiffs' hours billed and a 5% voluntary reduction in fees for excessive or duplicative work, the Court finds that plaintiffs are owed the following:

| ATTORNEY | FIRM | HOURS | RATE | TOTAL |
|---|---|---|---|---|
| Katz | Katz Melinger PLLC | 99 | $400.00 | $39,600.00 |
| Grunfeld | Katz Melinger PLLC | 375.7 | $325.00 | $122.102.50 |
| Chandler | Katz Melinger PLLC | 12.65 | $200.00 | $2,530.00 |
| Sackowitz | Katz Melinger PLLC | 35.2 | $200.00 | $7,040.00 |
| Singer | Katz Melinger PLLC | 43.7 | $200.00 | $8,740.00 |
| Slater | Slater Slater Schulman LLP | 23 | $400.00 | $9,200.00 |
| Schulman | Slater Slater Schulman LLP | 18.6 | $400.00 | $7,440.00 |
| Schulman | Slater Slater Schulman LLP | 1 | $125.00[20] | $125.00 |
| **SUBTOTAL** | | | | **$196,777.50** |
| **Voluntary 5% Reduction in Fees:** | | | | ($9,838.88) |
| **TOTAL ATTORNEYS' FEES AWARDED** | | | | **$186,938.63** |

## B.  Reduction in Award Based on Amounts Paid

On August 14, 2015, the Honorable Carol B. Amon granted partial summary judgment to plaintiffs as to their claims under Section 195(3) of the NYLL for wage statement violations and ordered defendants to pay each of the three plaintiffs $2,500 for a total of $7,500.  (Mem. and Order, Aug. 14, 2015, ECF No. 43).  At the time this Court issued its opinion on March 24, 2017

---

[20]This rate represents the fees Mr. Schulman seeks for one hour of travel.

as to the amount of damages owed, the Court was unaware that defendants had previously paid

to plaintiffs the amounts awarded by Judge Amon in connection with the motion for partial

summary judgment.  (See Satisfaction of Judgment, Oct. 26, 2015, ECF No. 48).  On March 29,

2017, plaintiffs filed a letter motion with the Court asking that the Court modify the damages

award in the Court's March 24, 2017 Memorandum and Order.  (Pls.' Letter Mot., Mar. 29,

2017, ECF No. 86).  Defendants sought similar relief by way of cross-motion on August 25,

2017.  (See Defs.' Letter Mot. at 4, Aug. 25, 2017, ECF No. 95 ("Defendants hereby respectfully

cross-move for an order pursuant to Fed. R. Civ. P. 60 correcting the Court's March 24, 2017

order and any judgment entered thereon[.]")).

     In their letter motion and in a proposed order submitted with their motion, defendants

appear to acknowledge that judgment had yet to be entered on the Court's March 24, 2017 Order.

(See Defs.' Proposed Order, Aug. 25, 2017, ECF No. 95-1 (stating "[d]efendants hereby

respectfully cross-move for an order pursuant to Fed. R. Civ. P. 60 correcting the Court's March

24, 2017 order and any judgment entered thereon[.]"); see also Defs.' Letter Mot. at 2 (citing

Lane v. 1199 SEIU Healthcare Workers Labor Union, No. 16-3566-cv, 2017 WL 2197828, at *1

n.1 (2d Cir. May 18, 2017) (summary order))).  The appeal in this matter was filed on September

19, 2017 and entered by the Clerk of Court for the Second Circuit on September 21, 2017.  See

Docketing Notice, Bedasie v. Mr. Z Towing, Inc., No. 17-2922 (2d Cir. Sept. 21, 2017) (2d Cir.

ECF No. 1-1).

     Normally, "filing the notice of appeal . . . would terminate the district court's power to

amend the judgment without leave of the Court of Appeals."  Burger King Corp. v. Horn &

Hardart Co., 893 F.2d 525, 527 (2d Cir. 1990) (citing Fed. R. Civ. P. 60).  As one leading treatise

explains, however,

> The doctrine that the filing of a notice of appeal "confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal" should not prevent the district court from acting, after the filing of a premature notice of appeal, to take the steps that will ripen the notice of appeal.

16A Wright, Miller, & Cooper, Federal Practice & Procedure: Jurisdiction § 3950.5 (4th ed.)

(quoting Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 58 (1982)).  Under Rule 4 of

the Federal Rules of Appellate Procedure, a notice of appeal filed after the court announces

judgment, but before it disposes of a motion for relief under Rule 60 of the Federal Rules of

Civil Procedure, "becomes effective to appeal a judgment or order . . . when the order disposing

of the last such remaining motion is entered."  Fed. R. App. P. 4(a)(4)(B)(i); see also id. R.

4(a)(4)(A)(vi).  Thus, this Court only possesses jurisdiction to correct the judgment if the

defendants' notice of appeal was filed prematurely.

   While it is unclear from defendants' submissions whether they were of the view that this

Court lacked jurisdiction to modify the damages calculation at the time they filed their letters

(compare Defs.' Letter Mot. at 4, ECF No. 95; Defs.' Proposed Order, ECF No. 95-1, with

Defs.' Letter Mot. at 2; Defs.' Notice of Appeal, Sept. 19, 2017, ECF No. 100),[21] in the Court's

view, no judgment was ever entered precisely because of the outstanding post-trial motions and

the need to determine attorneys' fees.  The Rule 60 motion to correct the judgment filed by

plaintiffs on March 29, 2017 tolled the time in which to appeal this Court's March 27, 2017

Memorandum and Opinion, see Fed. R. App. P. 4(a)(4)(A)(vi), and thus, this Court retains

---

[21] Defendants now contend that judgment was deemed to have been entered 150 days after the Court entered its Order.  See Fed. R. Civ. P. 58(c)(2)(B).

jurisdiction to correct the order.

However, even if the Court possesses jurisdiction to modify the judgment, Federal Rule of Civil Procedure 60 may constrain that power. Rule 60 provides that "after an appeal has been *docketed* in the appellate court and while it is pending, such a mistake [in a judgment or order] may be corrected only with the appellate court's leave." Fed. R. Civ. P. 60(a) (emphasis added). Based on its plain language, Rule 60(a) provides a non-jurisdictional limit on the Court's ability to correct an order or judgment absent leave of the Court of Appeals. See Fed. R. Civ. P. 60(a); Burger King Corp. v. Horn & Hardart Co., 893 F.2d at 527 (2d Cir. 1990).

Federal Rule of Civil Procedure 62.1(a), however, provides a mechanism for a district court to indicate how it would rule on a motion for relief that "the court lacks authority to grant because of an appeal that has been docketed and is pending." Fed. R. Civ. P. 62.1(a). Given that both parties agree that the $7,500 has already been paid by the defendants, the Court would grant plaintiff's motion to correct the judgment (Pls.' Letter Mot., Mar. 29, 2017, ECF No. 86), to which the defendants consent, if the Court of Appeals were to remand for that purpose. See Fed. R. Civ. P. 62.1(a)(3). Thus, pursuant to Rule 62.1(a), this Court indicates that if the Court of Appeals were to remand for that purpose, it would grant plaintiffs' motion to correct the judgment to reduce the amount of damages (exclusive of attorneys' fees and costs) from $119,655.22 to $112,155.11. See Fed. R. Civ. P. 62.1(a)(3). (See Pls.' Letter Mot., Mar. 29, 2017, ECF No. 86). The parties are ordered to notify the Circuit Clerk as required by Rule 62.1(b) of the Federal Rules of Civil Procedure and Rule 12.1(a) of the Federal Rules of Appellate Procedure.

Appeals were to remand for that purpose, it would grant plaintiffs' motion to correct the judgment to reduce the amount of damages (exclusive of attorneys' fees and costs) from $119,655.22 to $112,155.11. See Fed. R. Civ. P. 62.1(a)(3). (See Pls.' Letter Mot., Mar. 29, 2017, ECF No. 86). The parties are ordered to notify the Circuit Clerk as required by Rule 62.1(b) of the Federal Rules of Civil Procedure and Rule 12.1(a) of the Federal Rules of Appellate Procedure.

## CONCLUSION

In sum, the Court awards plaintiffs **$186,938.63** in attorneys' fees for work performed in this litigation through September 1, 2017. The Court renders an indicative ruling under Rule 62.1(a) that it would grant the parties' motions to reduce the damages award from $119,655.11 to $112,155.11 and would recalculate prejudgment interest to the date of the amended order. The parties are directed to notify the Clerk of the Court of Appeals for the Second Circuit as required by Fed. R. Civ. P. 62.1(b) and Fed. R. App. P. 12.1(a).

The Clerk of Court is hereby Ordered to enter partial judgment in favor of plaintiffs for the amount of $186,938.63, which represents plaintiffs' attorneys' fees and costs through September 1, 2017, and is directed to send copies of this Order to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
      November 27, 2017

/s/ Cheryl L. Pollak

Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York

25